519 F.2d 728
 Howard E. BRADFORD, Individually and on behalf of all others
similarly situated, Appellant,
v.
Robert WEINSTEIN et al., Appellees.
Levi JENKINS, on behalf of himself and all others similarly
situated,Appellant,
v.
Walter D. TYLER et al., Appellees.
 Nos. 73-1751, 73-1921.
 United States Court of Appeals,
Fourth Circuit.
 Argued Feb. 4, 1974.
Decided Nov. 22, 1974.
Certiorari Granted June 2, 1975.
See 95 S.Ct. 2394.
 
 Ralph S. Spritzer, Philadelphia, Pa. (Court-appointed counsel), and Howard Lesnick, Philadelphia, Pa., for appellant in Nos. 73-1751 and 73-1921.
 Emmet H. Clair, Asst. Atty. Gen. (Daniel R. McLeod, Atty. Gen., Robert M. Ariail, Asst. Atty. Gen., on brief) for appellees in No. 73-1921; Jacob L. Safron, Asst. Atty. Gen. (Robert Morgan, Atty. Gen. of North Carolina, on brief), for appellees in No. 73-1751.
 Before BRYAN, Senior Circuit Judge, and WINTER and BUTZNER, Circuit Judges.
 WINTER, Circuit Judge:
 
 
 1
 These two appeals present two important questions: Does the due process clause of the fourteenth amendment have any application to the conduct of proceedings by a parole board in states which undertake to grant paroles to certain prisoners before service in full of the sentences imposed upon them? If so, may the prisoners complain of a denial of due process in a suit under 42 U.S.C. § 1983, where the sole basis of their complaint is the manner in which the proceedings were conducted and there is no claim that they are entitled to immediate or even earlier release? We think that both questions should be answered in the affirmative; but, for present purposes, we refrain from defining the effect of the application of the due process clause to the procedure for granting paroles.
 
 
 2
 No. 73-1751 is a class action in which the named plaintiffs, inmates of North Carolina correctional institutions, sued for themselves and others similarly situated under 42 U.S.C. § 1983, alleging that they were eligible to be considered for parole, that it had been denied them but that the proceedings were constitutionally defective because they were afforded no hearing before the parole board, they had no notice of or opportunity to comment upon adverse information to be relied on in the process of decision, and they were never advised of the reasons for denial of parole or the evidence upon which denial was based. The district court denied class action status and it dismissed the individual claims, holding that the "Due Process Clause does not apply in procedures designed to determine suitability for parole." We reverse and remand for further proceedings.
 
 
 3
 In No. 73-1921, plaintiff, an inmate of a South Carolina prison, sued for himself and others similarly situated under 42 U.S.C. § 1983. He alleged that he had become eligible for parole under South Carolina law but that parole was denied him. The proceedings were constitutionally defective, according to him, because of (1) the character of the evidence on which the parole board relied, (2) its failure to grant him a "full" and impartial hearing with advance notice of adverse information, (3) its failure to establish in advance of judgment the criteria of judgment, and (4) its failure to state reasons for denial of parole. The district court dismissed the complaint for failure to exhaust available state remedies. It was of the view that Preiser v. Rodriguez, 411 U.S. 475, 93 S.Ct. 1827, 36 L.Ed.2d 439 (1974), was applicable since plaintiffs' ultimate goal was release on parole, and therefore plaintiffs' exclusive remedy was to seek a writ of habeas corpus to which the exhaustion requirement of 28 U.S.C. § 2254(b) applied. We again reverse and remand for further proceedings.
 
 I.
 
 4
 It is important to note at the outset that in their pleadings, their briefs,[1] and in their oral argument, plaintiffs make no claim that they are entitled to immediate release. Nor do they claim that they have a right to parole so that they would be released prior to the full service of their sentences less whatever credits the states of North Carolina and South Carolina may grant them. They also make no claim that they have the right to inquire into the internal functioning of the parole boards or the adjudicatory processes by which paroles are granted or denied. Cf. United States Board of Parole v. Merhige, 487 F.2d 25 (4 Cir. 1973). The sole thrust of their complaints is a constitutional attack upon the procedures of the respective parole boards. As characterized by their counsel, the substantive question is not the right to parole but the right to procedural due process in the consideration of parole.
 
 
 5
 Since North Carolina and South Carolina have both adopted legislation affording even the prisoner serving the longest term upon conviction of even the most heinous crime the right to be considered eligible for release, usually upon one or more conditions, prior to service of the entire term imposed on him,[2] we have no difficulty in concluding that the due process clause has some application to the proceedings in which it is determined whether that option shall be granted him. This is so even though we fully recognize that no prisoner ever acquires a right to earlier release; at most he has a right only to be considered for earlier release and a privilege, which may be withheld, to be granted it.
 
 
 6
 As Board of Regents v. Roth, 408 U.S. 564, 569-70, 92 S.Ct. 2701, 2705, 33 L.Ed.2d 548 (1970), teaches:
 
 
 7
 The requirements of procedural due process apply only to the deprivation of interests encompassed by the Fourteenth Amendment's protection of liberty and property. When protected interests are implicated, the right to some kind of prior hearing is paramount. But the range of interests protected by procedural due process is not infinite. (Footnote eliminated.)
 
 
 8
 Both Roth and its companion case, Perry v. Sindermann, 408 U.S. 593, 92 S.Ct. 2694, 33 L.Ed.2d 570 (1970), were concerned with the discharge of teachers employed by state-owned-and-operated educational institutions. Both cases turned primarily on whether the teachers concerned had a "property" interest in their employment, although Roth contained instructive dicta about when a public-employed teacher's "liberty" might be limited, as, for example, where he was discharged for a reason which impugned his good name, reputation, honor or integrity. 408 U.S. 573-74, 92 S.Ct. 2701. As a consequence, Roth and Sindermann did little to provide a definitive definition of "liberty" which we could easily apply and which would be dispositive of these appeals. Roth did say that "liberty" protected by due process extends "beyond the sort of formal constraints imposed by the criminal process" and that the term is "not confined to mere freedom from bodily restraint" (quoting Bolling v. Sharpe, 347 U.S. 497, 499, 74 S.Ct. 693, 694, 98 L.Ed. 884 (1954)). 408 U.S. at 572, 92 S.Ct. at 2706.
 
 
 9
 We are of the view that plaintiffs' right to consideration for parole eligibility is, at least, an aspect of liberty to which the protection of the due process clause extends. Indeed, in North Carolina, which guarantees to each prisoner with respect to parole "a review and consideration of his case upon its merits," the right may be one of "property." This conclusion stems from three of the latest cases to consider the myriad of situations in which the due process clause is applicable: Morrissey v. Brewer, 408 U.S. 471, 92 S.Ct. 2593, 33 L.Ed.2d 484 (1972); Gagnon v. Scarpelli, 411 U.S. 778 (1973); and Wolff v. McDonnell, 418 U.S. 539, 94 S.Ct. 2963, 41 L.Ed.2d 935 (1974). All were cases in which "liberty" was at stake. In Morrissey, the due process clause was held applicable to proceedings having the potential of revocation of parole; in Gagnon, the proceedings having the potential of revocation of probation; and in Wolff, to disciplinary proceedings within a correctional institution. It is true that in Morrissey and Gagnon the continued actual liberty of the subject of the proceeding was at stake, but in Wolff, what was at stake was discipline usually more onerous conditions of servitude of one already confined.
 
 
 10
 In the instant cases, there is no present liberty at stake. There is only the right to be considered for parole and the inchoate privilege of some earlier future release if the parole board, in its discretion, concludes to grant it. The case is really the converse of Wolff. There, one who was confined was subjected to the risk of durance more vile; here, one who is confined is afforded the right of consideration of partial release from restraint and the privilege of partial release. The first is a right not to be restrained; the second, the privilege of release from restraint. The distinction is without a difference, because the historical dichotomy of protection, depending upon whether something is a right or a privilege, has now been eradicated. Graham v. Richardson, 403 U.S. 365, 374, 91 S.Ct. 1848, 29 L.Ed.2d 534 (1971); Morrissey v. Brewer, 408 U.S. at 481, 92 S.Ct. 2593; Board of Regents v. Roth, 408 U.S. at 571, 92 S.Ct. 2701. Instead, the test of "(w)hether any procedural protections are due depends on the extent to which an individual will be 'condemned to suffer grievous loss.' Joint Anti-Fascist Refugee Committee v. McGrath, 341 U.S. 123, 168, 71 S.Ct. 624, 95 L.Ed. 817 (1951) (Frankfurter, J., concurring) . . . ." We think it would be a grievous loss for a prisoner by reason of a completely ex parte proceeding, and the resulting increased opportunity for committing error, to be denied parole and required to serve more of his term because the attention of the parole board was not called to data tending to indicate that parole should be granted, or for a prisoner whose incarceration has as its ultimate objective the prisoner's rehabilitation to fail to know, let alone understand, why parole is denied him and hence what changes in attitudes, habits, and the like will be required if he is ever to be successful in obtaining parole, unless, of course, there is found to be some compelling state interest in why he should not be advised. In the case of the latter, absent proof to the contrary, we would presume prejudice also in the fact that a denial of parole carries with it an adverse innuendo probably making a successive application for parole more difficult to sustain. It follows that since procedural due process was required to be afforded in Wolff, it must be afforded here.[3]
 
 
 11
 In sum, we think that the due process clause has application to parole eligibility proceedings. Our views are in accord with those expressed in Childs v. United States Board of Parole, 371 F.Supp. 1246 (D.D.C.1973); and United States ex. rel. Johnson v. Chairman of New York State Board of Parole, 500 F.2d 925 (2 Cir. 1974), vacated as moot, 419 U.S. 1015, 95 S.Ct. 488, 42 L.Ed.2d 289. We are not persuaded by those cases which have indicated a contrary conclusion. See, e. g., Menechino v. Oswald, 430 F.2d 403 (2 Cir. 1970), cert. den., 400 U.S. 1023, 91 S.Ct. 588, 27 L.Ed.2d 635 (1971); Walker v. Oswald, 449 F.2d 481 (2 Cir. 1971); Scarpa v. United States Board of Parole, 477 F.2d 278 (5 Cir. 1973), vacated on other grounds, 414 U.S. 809, 94 S.Ct. 79, 38 L.Ed.2d 44 (1973); Buchanan v. Clark, 446 F.2d 1379 (5 Cir. 1971); Barnes v. United States, 8 Cir., 445 F.2d 260; Schawartzberg v. United States Board of Parole, 399 F.2d 297 (10 Cir. 1968). It should be noted that each, except Scarpa, was decided before Morrissey, Gagnon and Wolff, from which we take our cue. In Scarpa, what was the correct reading of Morrissey was identified in the main opinions of the in banc court as one of the principal points over which the division occurred. We think that in the light of Gagnon and Wolff, Morrissey should receive the reading placed on it by Judges Tuttle, Wisdom and Goldberg, in dissent, in Scarpa.
 
 
 12
 Of course, to conclude that the due process clause has application to parole eligibility proceedings is only the beginning of the inquiry, because immediately and inevitably the next question is how much process is "due." On this, we express no view. In these records, plaintiffs' allegations have not been proved. More importantly, defendants' practices and procedures with respect to parole eligibility proceedings have not been shown. Nor have defendants' interests in preserving the practices and procedures currently followed been developed. All of these must be known because "due process" is a flexible concept and the due process clause, where it is applicable, does not carry with it a fixed panoply of rights or a fixed mode of procedure. "(C) onsideration of what procedures due process may require under any given set of circumstances must begin with a determination of the precise nature of the government function involved as well as of the private interest that has been affected by governmental action." Cafeteria Workers v. McElroy, 367 U.S. 886, 895, 81 S.Ct. 1743, 1748, 6 L.Ed.2d 1230 (1961); Morrissey, 408 U.S. at 471; Wolff, 418 U.S. 539, 94 S.Ct. 2963, 41 L.Ed.2d 935. This is so because the due process clause only requires a "balance" between what may be conflicting interests to arrive at what is substantially fair and just. Wolff, 418 U.S. 539, 94 S.Ct. 2963, 41 L.Ed.2d 935. Hence, we leave to the district courts in the first instance the determination of what the due process clause requires in the instant cases after the district courts have conducted the requisite full evidentiary exploration.
 
 II.
 
 13
 We turn to the question of whether plaintiffs can litigate the effect of the application of the due process clause to the procedure for granting paroles in a suit under 42 U.S.C. § 1983. The argument that they cannot is erected on Preiser v. Rodriguez, supra, and so we begin by a consideration of that case.
 
 
 14
 In Preiser, the Supreme Court held that 28 U.S.C. § 2254(b), which requires an applicant for federal habeas first to exhaust "the remedies available in the courts of the State," superseded the unqualified right to sue under 42 U.S.C. § 1983 to redress a state denial of a federal constitutional right where the substance of the suit is a challenge that is "just as close to the core of habeas corpus as an attack on the prisoner's conviction." The Court further explained that a suit is close to the "core of habeas corpus" if it challenges "directly to the constitutionality of (the prisoner's) physical confinement itself and seeks either immediate release from that confinement or the shortening of its duration." 411 U.S. at 489, 93 S.Ct. at 1836. In Preiser, the prisoners had alleged that they had been deprived of good-time credits as a disciplinary measure in administrative proceedings that were conducted with a lack of procedural due process. The specific relief sought was restoration of such credits. By the time their complaints were filed in the district court, such relief would have resulted in their immediate release. Accordingly, these suits were held to be within the core of habeas corpus. The Court carefully indicated, however, that the result would have been the same had the practical effect of a grant of the requested relief been merely a shortening of the duration of the sentence rather than immediate release. The Court articulated as a rationale for its ruling the policy of avoiding needless friction in federal-state relationships caused by premature intervention by the federal courts in matters of intimate state concern.
 
 
 15
 As we have said, plaintiffs disclaim that the purpose of their suits is to effect their release or to shorten the duration of their confinement. Thus, we do not deem this is a case where the suits were close to the core of habeas corpus or "as close to the core of habeas corpus as an attack on the prisoner's conviction," as discussed and defined in Preiser.
 
 
 16
 Notwithstanding the apparent inapplicability of Preiser, in the instant cases the defendants argue that the policy of federal-state comity is broad enough to apply to suits seeking redetermination of parole suitability under court mandated procedures affording procedural due process. It is true that the Supreme Court spoke of the interest of a state in having an initial opportunity to correct difficulties and disputes which arise in the course of its relationship with its prisoners, and that the language employed was broad enough to cover any dispute between the state and its prisoners concerning the manner in which the state's parole system was administered. See 411 U.S. at 475, 93 S.Ct. 1827. However, the Supreme Court also took pains to reaffirm its holdings in a series of prior cases that 42 U.S.C. § 1983 was a proper vehicle for challenge of certain kinds of prison conditions. See, e. g., Houghton v. Shafer, 392 U.S. 639, 88 S.Ct. 2119, 20 L.Ed.2d 1319 (1968). See also Procunier v. Martinez, 416 U.S. 396, 94 S.Ct. 1800, 40 L.Ed.2d 224 (1974) (decided after Preiser ). Thus, it appears that the exhaustion requirement under the habeas statute does not apply to all suits by prisoners seeking to challenge the manner in which the state penal system is administered. Only such suits as challenge the "constitutionality of . . . physical confinement itself and (seek) either immediate release from that confinement or the shortening of its duration" are subject to the exhaustion requirement.
 
 
 17
 Our view that these are not cases which fall within the Preiser doctrine finds support in the construction placed on the holding in Preiser in Wolff v. McDonnell, 418 U.S. 539, 94 S.Ct. 2963, 41 L.Ed.2d 935 (June 26, 1974). In Wolff, an inmate in a Nebraska prison brought a class action asserting that prison disciplinary proceedings violated due process. The relief sought was threefold: (1) the restoration of good time, (2) that a plan be submitted by the prison authorities for a hearing procedure in connection with withholding and forfeiture of good time which comported with due process, and (3) damages for the deprivation of civil rights resulting from unconstitutional procedures. The claim was made that under Preiser the validity of the procedures for depriving prisoners of good-time credits could not be considered in a suit brought under 42 U.S.C. § 1983. That claim was rejected, however, in the following language:
 
 
 18
 The complaint in this case sought restoration of good-time credits, and the Court of Appeals correctly held this relief foreclosed under Preiser. But the complaint also sought damages; and Preiser expressly contemplated that claims properly brought under § 1983 could go forward while actual restoration of good-time credits is sought in state proceedings. 411 U.S., at 499, n. 14, 93 S.Ct. 1827. Respondent's damage claim was therefore properly before the District Court and required determination of the validity of the procedures employed for imposing sanctions, including loss of good time, for flagrant or serious misconduct. Such a declaratory judgment as a predicate to a damage award would not be barred by Preiser ; and because under that case, only an injunction restoring good time improperly taken is foreclosed, neither would it preclude a litigant with standing from obtaining by way of ancillary relief an otherwise proper injunction enjoining the prospective enforcement of invalid prison regulations.
 
 
 19
 We therefore conclude that it was proper for the Court of Appeals and the District Court to determine the validity of the procedures for revoking good-time credits and to fashion appropriate remedies for any constitutional violations ascertained, short of ordering the actual restoration of good time already cancelled. (Emphasis added; footnote eliminated) 418 U.S. at 554, 94 S.Ct. at 2974.
 
 
 20
 On the authority of Preiser and Wolff, we therefore hold that plaintiffs may litigate their due process objections to defendants' parole eligibility proceedings in a suit under 42 U.S.C. § 1983 without the need for exhaustion under 28 U.S.C. § 2254(b).
 
 
 21
 Accordingly, we reverse the judgments of the district courts and remand the cases for further proceedings consistent with the views we have expressed.
 
 
 22
 Reversed and remanded.
 
 BRYAN, Senior Circuit Judge (dissenting):
 
 23
 State control of prisoners convicted under its laws and still in its custody under judgments of its courts is radically infringed, if not defeated, by today's majority opinion. For me it affronts statutory and decisional commandments against Federal disruption of State penal systems. Hence I cannot here join my brothers.
 
 
 24
 Appellants, inmates of State correctional institutions, brand as unconstitutional the local pattern of parole procedure. In my view they should be required to resort first to their respective State courts, with the right afterwards, if unsuccessful there, to assert in the United States District Court, by way of habeas corpus, their present claims. Here the reverse course is pursued: the State tribunals are skirted and these suits commenced in the Federal courts. The short-cut is to plead the suits under the Civil Rights Act of 1871, 42 U.S.C. § 1983.[1]
 
 
 25
 The several District Courts dismissed the suits on varying grounds. However, the results were altogether correct and I would affirm in each instance.
 
 
 26
 The appellants flout the precept of Preiser v. Rodriguez, 411 U.S. 475, 93 S.Ct. 1827, 36 L.Ed.2d 439 (1973) avowing the policy and mandate of Congress, as announced in 28 U.S.C. § 2254(b)[2], to be that complaints like the present ones must first be taken to the State courts. The majority would escape Preiser on the premise that the instant suits were saved from its constriction by Wolff v. McDonnell, 418 U.S. 539, 94 S.Ct. 2963, 41 L.Ed.2d 935 (1974). Dissection of the two decisions will, I think, reveal the conclusion untenable.
 
 
 27
 To demonstrate fully the infirmity of the reversal now ordered, reiteration of some of the facts in suit is unavoidable. However, there is no occasion to descant, as the majority does, on whether Fourteenth Amendment due process is a requisite of hearings on the suitability of inmates for parole; for my conclusion this right may be conceded arguendo. The only question is the proper procedure and the proper forum. To begin, it is to be noted that the plaintiffs are not asking damages; they are not pressing for parole; they are not attacking the parole systems; they are not complaining of the refusal of parole. The burden of their complaints is a constitutional assault upon procedures for pre-parole consideration of parole eligibles. A declaratory judgment of invalidity of this earlier step in parole consideration and an implementing injunction against it are prayed.
 
 
 28
 The grievances in each instance may be summed as follows: the prisoner was granted no interviews, or at least none lasting more than a few minutes; he was not apprised of any objection to his release; no opportunity was afforded to verify the correctness of, or comment upon, any adverse information in his prison record; no chance was given him to say why he thought himself deserving of consideration for parole; no criteria for board judgment was outlined to him; and if his application were denied, only the decision was conveyed to him, unaccompanied by the reasons for the determination or a reference to disqualifying evidence.
 
 
 29
 In the North Carolina case the District Court decreed that relief in the premises was not available under § 1983 to a State prisoner. Its view was that § 1983 is not a means for evaluation of State parole procedures. In South Carolina the District Judge, following Preiser, dismissed the action, noting plaintiffs' failure to exhaust remedies available under State law and concluding that habeas corpus was the only means of relief open to the complainant.
 
 
 30
 Preiser makes quite clear that, because of the mandates of 28 U.S.C. § 2254(b), the sole remedy in the Federal courts for the unconstitutional detention of persons under State court judgments is habeas corpus, after exhaustion of the remedies, if any, provided by the State to protect their rights. True, Preiser dealt with claims for immediate release from custody, but its teaching is broad enough to exclude the plaintiffs' attempts to sue at once in § 1983. To forego initial recourse to the State authorities would be to disregard the fundamental and compelling reason of the decision: that § 2254(b) was intended to prevent friction between the States and the Federal government in adjudicating the rights of State prisoners. Permitting recourse to § 1983 disrupts this accommodation, and so is impermissible here.
 
 
 31
 This procedural pattern logically embraces solution of the grievances now pleaded. They relate wholly to detention of persons under State court judgments. They do not touch upon any other circumstance of imprisonment, such, for example, as the physical conditions or treatment in the custody. A parole hearing although it may be only an intermediate consideration of an inmate's preparedness for parole and not a final determination of release or retention is nonetheless an event in the chain of ultimate detention. It is intended to, and eventually may, affect the duration of the incarceration, and this possibility puts it within the compass of habeas corpus. Preiser wrote directly to the point:
 
 
 32
 "So, even if restoration of respondents' good-time credits had merely shortened the length of their confinement, rather than required immediate discharge from that confinement, their suits would still have been within the core of habeas corpus in attacking the very duration of their physical confinement itself. It is beyond doubt, then, that the respondents could have sought and obtained fully effective relief through federal habeas corpus proceedings." (Accent added.) Preiser v. Rodriguez, supra, 411 U.S. at 487-488, 93 S.Ct. at 1835.
 
 
 33
 Preiser squarely refuted any suggestion that the language of § 1983 would permit the appellants to employ it as they now attempt. The opinion summarizes:
 
 
 34
 "In short, Congress has determined that habeas corpus is the appropriate remedy for state prisoners attacking the validity of the fact or length of their confinement, and that specific determination must override the general terms of § 1983." Id. at 490, 93 S.Ct. at 1837. (Accent added.)
 
 Again:
 
 35
 "The rule of exhaustion in federal habeas corpus actions is rooted in considerations of federal-state comity. . . .
 
 
 36
 "It is difficult to imagine an activity in which a State has a stronger interest, or one that is more intricately bound up with state laws, regulations, and procedures, than the administration of its prisons. . . . The strong considerations of comity that require giving a state court system that has convicted a defendant the first opportunity to correct its own errors thus also require giving the States the first opportunity to correct the errors made in the internal administration of their prisons." Id. at 491, 93 S.Ct. at 1837. (Accent added.)
 
 
 37
 Notwithstanding these deliberated enunciations the majority here volunteers the proposition that only suits challenging the constitutionality of physical confinement and demanding release or lesser detention are within the exhaustion requirement of § 2254(b). As just demonstrated, this authenticated deduction does violence to the words of the Supreme Court.
 
 
 38
 It is not questioned now that both North Carolina and South Carolina provide remedies quite adequate and available, within the intent of § 2254(b), to the respective appellant prisoners, either through administrative agencies or State court actions. Both States through their counsel have told this court that remedies of review exist, and there is no contradiction of these representations. At least the appellants were bound to make the effort. Furthermore, even if there is no State provision for relief, the appellants may seek Federal habeas corpus. Under Preiser absence of State remedies does not in any event authorize recourse to § 1983.
 
 
 39
 Preiser was not modified by Wolff in the former's exalting of the State remedy over an action under § 1983. The distinction was simply and explicitly laid out in both Preiser and Wolff. It is this: that if no damages are claimed, § 1983 is not invocable; if damages are demanded, the claim is triable under § 1983. But even then issues other than damages are entertainable under § 1983 only so far as they are ancillary to the establishment of damages. The reason for reserving this utilization of § 1983 is that damages are not recoverable in habeas corpus.
 
 
 40
 Damages, to repeat, were not sought in the instant causes. They were not asked in Preiser, and that is the very ground on which Preiser barred resort to § 1983. Damages were sued for in Wolff and that was the very point for its allowance of § 1983 use.
 
 This syllogism is confirmed in Preiser:
 
 41
 "The answer to this contention (res judicata as to damages) is that the respondents here sought no damages, but only equitable relief restoration of their good-time credits and our holding today is limited to that situation. If a state prisoner is seeking damages, he is attacking something other than the fact or length of his confinement, and he is seeking something other than immediate or more speedy release the traditional purpose of habeas corpus. In the case of a damages claim, habeas corpus is not an appropriate or available federal remedy. Accordingly, as petitioners themselves concede, a damages action by a state prisoner could be brought under the Civil Rights Act in federal court without any requirement of prior exhaustion of state remedies." 411 U.S. at 494, 93 S.Ct. at 1838. (Accent added.)
 
 The syllogism is paralleled in Wolff:
 
 42
 "The complaint in this case sought restoration of good-time credits, and the Court of Appeals correctly held this relief foreclosed under Preiser. But the complaint also sought damages ; and Preiser expressly contemplated that claims properly brought under § 1983 could go forward while actual restoration of good-time credits is sought in state proceedings. 411 U.S., at 499, n. 14, 93 S.Ct. (1827) at 1841. Respondent's damage claim was therefore properly before the District Court and required determination of the validity of the procedures employed for imposing sanctions, including loss of good time, for flagrant or serious misconduct. Such a declaratory judgment as a predicate to a damage award would not be barred by Preiser ; and because under that case, only an injunction restoring good time improperly taken is foreclosed, neither would it preclude a litigant with standing from obtaining by way of ancillary relief an otherwise proper injunction enjoining the prospective enforcement of invalid prison regulations." (Accent added.) Wolff v. McDonnell, supra, 418 U.S. at 554, 94 S.Ct. at 2974.
 
 
 43
 In § 2254(b) Congress enjoined upon the Federal courts the obligation of honoring comity when entering State provinces. Accordingly, the present appellants should be remanded to the appropriate State agencies or courts, for the nub of these controversies is primarily a State matter, and whenever resort is to a court then habeas corpus is the exclusive remedy.
 
 
 44
 I would affirm the District Court in both appeals.
 
 
 
 [1]
 A few brief references to their brief proves the point:
 No claim is made that the particular sentence being served has expired or that appellant (Jenkins et al., adopted by Bradford) has a right to abbreviate it. The dispute goes only to the manner in which the State judges the prisoner's potential for successful parole; there is no claim that the review process must or should lead to a specific outcome for a particular prisoner . . .. While it is doubtless the desire of appellant and others similarly situated to terminate their confinement as soon as possible, the Court is not being asked to rule on the duration of their confinement . . .. If appellant prevails in his federal suit, the dates of his release will still depend upon the discretionary judgment of those State officials who pass on the issue of parole.
 
 
 [2]
 3C G.S. N.C. § 148-58 (1974) provides that all prisoners shall be eligible to have their cases considered for parole after the service of (a) a fourth of their sentence if the sentence is determinate, (b) a fourth of their minimum sentence if the sentence is indeterminate, and (c) ten years of a life sentence. The statute provides that it "shall (not) be construed as making mandatory the release of any prisoner on parole, but shall be construed as only guaranteeing to every prisoner a review and consideration of his case upon its merits." (Emphasis added.) The statutes are silent about if and when a prisoner, denied parole when he first becomes eligible, is entitled to a subsequent review of his case. Presumably the regulations adopted under the authority of § 148-57 cover this matter, but they have not been pleaded
 In South Carolina, 11 Code of Laws S.C. § 55-611 (1973 Cum.Supp.) prescribes eligibility for parole after service of ten years for those sentenced to thirty years, more than thirty years, or life, and after service of the minimum indeterminate sentence for first offenders sentenced to an indeterminate term. The statute is silent about successive applications for parole, and it grants no general rule-making authority to the Probation, Parole and Pardon Board. Yet, it would seem obvious that a prisoner who is unable to satisfy the criteria for parole contained in § 55-612 when he first becomes eligible may satisfy them at a later date. Presumably a later, successive application may be entertained.
 
 
 [3]
 Other authorities support our conclusion that present enjoyment of a protectable interest is not a prerequisite of due process. See Goldsmith v. Bd. of Tax Appeals, 270 U.S. 117, 46 S.Ct. 215, 70 L.Ed. 494 (1926) (right of C.P.A. to practice before the Board of Tax Appeals); Willner v. Committee on Character and Fitness, 373 U.S. 96, 83 S.Ct. 1175, 10 L.Ed.2d 224 (1963), and Schware v. Board of Bar Examiners, 353 U.S. 232, 77 S.Ct. 752, 1 L.Ed.2d 796 (1957) (admission to the bar); Speiser v. Randall, 357 U.S. 513, 78 S.Ct. 1332, 2 L.Ed.2d 1460 (1958) (right to a tax exemption)
 
 
 [1]
 § 1983. "Civil action for deprivation of rights
 Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress."
 
 
 [2]
 § 2254(b). "State custody; remedies in Federal courts
 (b) An application for a writ of habeas corpus in behalf of a person in custody pursuant to the judgment of a State court shall not be granted unless it appears that the applicant has exhausted the remedies available in the courts of the State, or that there is either an absence of available State corrective process or the existence of circumstances rendering such process ineffective to protect the rights of the prisoner."