Wallace Russell **CHILDS**, Jr., et al.,
Plaintiffs,

v.

**UNITED STATES BOARD OF PAROLE**
et al., and 90 other cases.

**Civ. A. No. 1616–70.**

United States District Court,
District of Columbia.

Oct. 1, 1973.

As Modified Oct. 17, 1973.

Steven Brodsky, Washington, D. C.,
for plaintiffs.

Robert M. Werdig, Jr., Asst. U. S.
Atty. for the Dist. of Columbia, for defendants.

MEMORANDUM AND ORDER

BRYANT, District Judge.

Plaintiffs in this case are federal prisoners who have been denied parole by the United States Board of Parole, defendant herein. Plaintiffs claim that the defendant has violated their right to due process, and seek relief in an order from this court which would require the defendants to (1) provide written statements of reasons for denial of parole, (2) make available to prisoners the information which will be before the Board at the interview, and (3) furnish prisoners reasonably comprehensive and explanatory guidance relative to the criteria considered in passing on applications for parole.

Whatever may be said for the decisions which have dealt with this and/or related questions involving due process

requirements and the parole application stage, either directly or indirectly, it seems fair to say that the slate has been wiped all but clean by Morrissey v. Brewer, 408 U.S. 471, 92 S.Ct. 2593, 33 L.Ed.2d 484 (1972). In that case the Court faced the broad issue of "whether due process applies to the parole system . . . ." *Morrissey*, at 477, 92 S.Ct. at 2598, and then moved to the specific issue before the Court, i. e. whether those requirements applied to parole revocation. The Court, speaking through Chief Justice Burger, decided that they do, and in his discussion of the matter it appears that he provides the blueprint for the resolution of the specific issue before this court.

At the outset it was determined in *Morrissey* that the parole system has become "an integral part of the penological system." *Morrissey*, at 477, 92 S.Ct. at 2598.

In the specific question before it the Supreme Court recognized that in parole revocation proceedings, one is not entitled to all of the procedural safeguards that are inherent in a trial de novo, *Morrissey*, at 480. It applied the concept of flexibility which "calls for such procedural protections as the particular situation demands," *Ibid.*, and thereupon set forth the situation and the required protections.

The defendant points out that no appellate court, including the Supreme Court in *Morrissey, supra*, has held that due process extends to parole application interviews. The more important point, it seems, is that *Morrissey* found the parole system to be "an integral part of the penological system . . .", and that it did not hold that such requirements do not apply. Certain it is that the Supreme Court via a footnote quoting Bey v. Connecticut Board of Parole, 443 F.2d 1079, 1086 (CA2 1971), recognized and pointed up that there is some difference in importance between one's justifiable reliance in maintaining his freedom on parole so long as he does not violate its terms and mere anticipation of the parole status. This court does not

believe that it must infer from this reference that parole application procedures fall beyond the reach of due process requirements. Rather it conceives it to be a suggestion that the process which is due in the latter situation need not carry the same requirements as in the former. This is no more than consistent with the principle of requiring such procedural protections as the particular situation demands. When we examine the nature of the interest of the parolee facing revocation and that of the parole applicant in the light of the ultimate effect of the Parole Board's determination, it appears obvious that the difference is not enough to exclude the applicant from due process protections. This is so simply because the stakes are the same, incarceration or conditional freedom. Contra, Scarpa v. U. S. Board of Parole, 477 F.2d 278 (CA5 1973).

Upon examining the record before this court in light of the purposes and objectives of the parole system and its role in the overall administration of criminal justice it appears that the application aspect must of necessity fall under the canopy of the minimal due process requirements claimed by plaintiffs. The court observes also that implementation of the requested protections will cast a comparatively light burden on the defendant.

In view of the foregoing the court concludes as follows:

1. Defendants must provide narrative written statements of reasons based upon salient facts or factors in each case to all prisoners whose applications for parole are acted upon and not granted commencing no later than 90 days hence.

2. Defendants are to submit to the court within 60 days proposed regulations governing access by a prisoner to the information which will be before the Board and the submission of responses on behalf of parole applicants, and

3. Defendants are to submit to the court within 60 days proposed procedures for conveying to prisoners reasonably comprehensive explanatory guid-

**1248**

ance as to the criteria to be considered in passing upon applications for parole.

So ordered.

## ORDER

Plaintiffs have moved, pursuant to Rule 59(e) of the Federal Rules of Civil Procedure, to modify the memorandum and order filed herein on October 1, 1973, and no opposition has been filed. Upon consideration thereof the motion is hereby granted, and the court orders that the memorandum and order of October 1, 1973 be and the same hereby is modified to include the following:

*Findings of Fact*

1. The Board does not presently provide, on a routine basis, statements of its reasons for not granting parole.

2. The Board's failure to convey reasons for its decisions not to grant parole has an impact upon parole applicants which includes both the appearance and reality of lacking fundamental fairness.

3. Under the Parole Board's present practices and procedures there exists a substantial danger that a significant number of decisions not to grant parole are made without reasoned consideration of the relevant facts and factors in each case, and are, therefore, arbitrary and capricious.

4. The Board's failure to require that decisions not to grant parole include stated reasons of any kind fails to provide reasonable assurance that such decisions will be reasoned decisions, based upon the facts of each case, rather than arbitrary or capricious decisions.

5. Under present Parole Board practices and procedures, a narrative written statement of reasons for not granting parole, which includes reference to the relevant facts and factors in each case, can be supplied by the Board with a minimum of administrative burden or additional resources.

6. The Board does not presently provide an opportunity for a parole applicant, or a representative of an applicant, to become apprised of the information before the Board which will be considered in passing upon the application for parole. This refusal is expressly not limited to a claimed need for confidentiality, but is instead asserted to be necessary on the ground that such apprisal would make the parole interview overly adversarial because applicants would attempt to dispute adverse allegations.

7. Present practices and procedures do not provide reasonable assurance that the Board's decisions on applications for parole will be based upon reasonably reliable determinations of fact. In fact, under present Parole Board practices and procedures, there exists a substantial danger of decisions which are based upon clearly erroneous assumptions of fact.

8. The sources of said danger of error include evidence of filing errors and omissions; confusion stemming from instances of mistaken identity; possible reliance upon outdated and superceded information; reliance upon unsubstantiated assertions; reliance upon conflicting, unclear, and in some instances not apparently reliable psychological testing data and similar information; and the like.

9. A procedure permitting a parole applicant to become apprised of the information which is before the Board, and to submit in some form a response, would greatly reduce the presently excessive danger of erroneous factual bases for decisions. Such a procedure can readily be devised so as to involve relatively little additional administrative burden. Such a procedure can be adopted with relatively little delay in the decision-making process. And, such a procedure can be adopted without thwarting the non-adversarial purposes of the parole application process. Indeed, such a procedure may frequently lead to the correction of errors—such as those resulting from misfilings, outdated information, or mistaken identity—which the Board would view as helpful rather than adversarial or "argumentative."

*Conclusions of Law*

The constitutional requirements of minimal due process—i. e., the appearance and actuality of fundamental fairness; reasonable assurance of reasoned decisions rather than arbitrary or capricious ones; and reasonable assurance of reasonably reliable factual bases for decisions—are applicable to the parole application process.

In the context of the parole application process, minimal due process requires, for the reasons set forth in the foregoing findings of fact, and in the October 1, 1973 memorandum and order, each of the procedures set forth in the order of October 1, 1973.