Preston DeWitt **WILEY**, Petitioner,

v.

**UNITED STATES BOARD OF PAROLE**
et al., Respondents.

No. 74–349 Civil.

United States District Court,
M. D. Pennsylvania.

Aug. 20, 1974.

Preston DeWitt Wiley, pro se.

S. John Cottone, U.S. Atty., Michael D. McDowell, Asst. U.S. Atty., Lewisburg, Pa., for respondents.

SHERIDAN, Chief Judge.

Preston DeWitt Wiley, a federal prisoner presently incarcerated at Allenwood Federal Prison, Montgomery, Pennsylvania, filed a petition for a writ of habeas corpus in which he challenges the regulations and procedures utilized by the United States Board of Parole in determining parole eligibility and in which he contends that the Board's decision denying him his immediate release on parole is unlawful. A petition for a writ of habeas corpus is a proper method for challenging denial of parole. 28 U.S.C.A. § 2241; Lupo v. Norton, D. Conn.1974, 371 F.Supp. 156.

Petitioner was convicted of misapplying monies of the Office of Economic Opportunity and sentenced to eighteen months imprisonment. On February 7,

1974, petitioner became eligible for a parole hearing,[1] for which he applied. After a hearing the Board denied petitioner's parole application and continued him to the expiration of his sentence.

Thereafter petitioner filed this action in which he contends that the Board's denial of parole constitutes a modification of the sentence imposed by the district court, that he qualifies for parole under the statutory criteria embodied in 18 U.S.C.A. §§ 4202, 4203, and that the Board's published parole decision-making guidelines, 28 C.F.R. § 2.52, 38 Fed. Reg. 31942 (1973), now embodied in 39 Fed.Reg. § 2.20,[2] are inconsistent with the statutory criteria for parole set forth in 18 U.S.C.A. §§ 4202, 4203 and therefore unlawful. In addition, petitioner asserts that the procedures of the Board fail to comply with the due process clause of the fifth amendment for the following reasons: (1) no access by inmates to the materials and information the Board relies on to make its parole decisions; (2) no chance to rebut the information relied on by the Board or to challenge its accuracy; (3) the lack of an evidentiary or adversary hearing, with the right to present favorable evidence. Petitioner's contentions will be considered *seriatim.*

▇▇▇ The Board of Parole is an independent statutory agency to which Congress granted broad discretionary powers in parole eligibility determinations, as is evidenced by the following statutory language:

"If it appears to the Board of Parole from a report by the proper institutional officers or upon application by a prisoner eligible for release on parole, that there is a reasonable probability that such prisoner will live and remain at liberty without violating the laws, and if in the opinion of the Board such release is not incompatible with the welfare of society, the Board may in its discretion authorize the release of such prisoner on parole. . . ." 18 U.S.C.A. § 4203(a).

Under this section, it is clear that release on parole is a matter of legislative grace, not of right, and that the determination of eligibility for parole is wholly within the discretion of the Parole Board. United States v. Frederick, 3 Cir. 1968, 405 F.2d 129. The courts are without power to grant a parole or to determine judicially suitability for parole. Scarpa v. United States Board of Parole, 5 Cir. 1973, 477 F.2d 278 (en banc), vacated and remanded for consideration of question of mootness, 1974, 414 U.S. 809, 94 S.Ct. 79, 38 L.Ed.2d 44; Barradale v. United States Board of Paroles and Pardons, M.D.Pa.1973, 362 F.Supp. 338.

Petitioner argues that since he is now eligible for parole consideration, and in view of what he believes is a good institutional record, he has a legal right to parole and hence the denial thereof constitutes "resentencing" by the Board. Moreover, petitioner contends that the Board cannot rely on the nature or seriousness of the offense in making its parole determinations, a factor which is inherently a part of the Board's published parole decision-making guidelines, which classify crimes according to the degree of severity of the offense behavior and indicate the customary range of time to be served before release, 28 C.F.R. § 2.52, 38 Fed.Reg. 31942 (1973); 39 Fed.Reg. § 2.20. Thus, petitioner claims that these paroling guidelines which the Board uses as an aid in making its decisions, are illegal because the Board's consideration of the seriousness of the offense and the effect parole of a convicted offender may have on the deterrence of criminal conduct are factors the Board cannot rely on, the sentencing

---

1. The minimum prison term which the sentencing court, pursuant to 18 U.S.C.A. § 4208(a)(1), had designated petitioner serve before becoming eligible for parole expired on February 7, 1974.

2. These paroling policy guidelines, originally confined to the Board's Northeast Region, which includes the state of Pennsylvania, became effective nationwide on June 5, 1974. See 39 Fed.Reg. § 2.20 (1974).

court having already taken them into account. Therefore, petitioner concludes that the Board cannot rely on "depreciating the seriousness of the offense" as a reason for denial of parole.

Petitioner's claims are without merit. As noted previously, 18 U.S.C.A. § 4203 provides that the Board in its discretion may release a prisoner on parole if it appears there is a reasonable probability that such prisoner will live and remain at liberty without violating the laws, and if the Board believes such release is compatible with the welfare of society. The seriousness of the offense and the effect parole of an offender may have on deterrence of criminal conduct, embodied in the "depreciating the seriousness of the offense" reason given by the Board for denial of parole, clearly are a proper basis for denying parole since these factors are relevant to and can be determinative of the question of whether the offender's release is compatible with the welfare of society, a criterion specifically mandated by 18 U.S.C.A. § 4203. Thus, the Board is free to rely in whole or in part on these factors in making an adverse parole determination.

■ The Board's paroling policy guidelines contained in Section 2.52 and now embodied in 39 Fed.Reg. § 2.20 take into account the statutory criteria for parole consideration in the following manner. The offender characteristics or risk scale relates to the standard set forth in 18 U.S.C.A. § 4203(a) that there must be a reasonable probability that the prisoner will live and remain at liberty without violating the law. The offense severity scale relates to the standard embodied in 18 U.S.C.A. § 4203(a) that the release of an inmate will not be incompatible with the welfare of society. The consideration of institutional performance relates to the requirement of 18 U.S.C.A. § 4202 that the prisoner must have observed the rules of the institution in which he has been confined. It should be emphasized that these guidelines were promulgated as just that—merely *guidelines*, and the Board is free to render a decision either above or below the guideline range where in the opinion of the Board the circumstances warrant. For example, the Board may reach a decision below or above the guidelines if the prisoner has an exceptionally good or poor institutional record, or if the Board feels that the clinical parole risk prognosis is substantially better or worse than indicated by the offender characteristics score of the inmate. Thus, while the guidelines structure the discretion of the Board within the broad statutory mandate, the Board remains free to consider each individual case on its merits. The court holds that the Board's published guidelines for parole decision-making are consistent with the general statutory criteria for parole embodied in 18 U.S.C.A. §§ 4202, 4203 and hence are valid.

■ The limited review of the Board's decision undertaken above is based on the principle that a discretionary decision cannot stand if it is shown to be based on a reason that is outside the scope of statutory authority. Battle v. Norton, D.Conn.1973, 365 F.Supp. 925; cf. Kent v. Dulles, 1958, 357 U.S. 116, 128–129, 78 S.Ct. 1113, 2 L.Ed.2d 1204. Having determined that the criteria relied on by the Board are consistent with the statutory directives, the court emphasizes that it is not the function of the judiciary to review generally the discretion of the Board or to review the credibility of reports and information received by the Board in making its decision. Tarlton v. Clark, 5 Cir. 1971, 441 F.2d 384, cert. denied, 1971, 403 U. S. 934, 91 S.Ct. 2263, 29 L.Ed.2d 713. The court will not substitute its judgment for that of the Board as to whether the rehabilitation of the inmate and the welfare of society would be best served by permitting him to serve his sentence beyond the confines of prison rather than by being continued in physical confinement. In making that determination the Board must consider many factors of a non-legal nature, such as psychiatric reports with respect to the prisoner, his mental and moral attitudes, his vocational education and training,

the manner in which he has used his time in prison, his physical and emotional health, his intra-personal relations with the prison staff and other inmates, and the prisoner's parole plan—his employment and residence arrangements and the environment to which he plans to return. The Board possesses the expertise and experience for ascertaining which factors are determinative of the unique situation presented by each applicant. Scarpa v. United States Board of Parole, supra. The statute, 18 U.S.C.A. §§ 4202, 4203, expressly gives the Board broad discretion in determining parole eligibility in recognition of the fact that many variables, some of an intangible and subjective nature, go into making an informed and intelligent parole decision. In short, in providing for parole, Congress realized the difficult and imprecise nature of parole prognosis.

■ Therefore, absent an abuse of discretion amounting to the denial of a constitutional right, and absent a decision that is clearly inconsistent with the broad statutory criteria, a court will not review the Board's discretion in denying an application for parole. The courts should not serve as a super-Parole Board.

There remains petitioner's contention that the Board's mode of operation violates the due process clause of the fifth amendment. There is a difference of opinion among the lower federal courts as to whether due process applies to parole decision-making, and if it does, the nature of the process that is due.[3]

In Morrissey v. Brewer, 1972, 408 U.S. 471, 92 S.Ct. 2593, 33 L.Ed.2d 484 the Supreme Court held that although parole revocation does not call for the full panoply of rights due a defendant in a criminal proceeding, revocation of a parolee's liberty falls within the protection of the due process clause. Thus, the court held that a revocation hearing must be conducted reasonably soon after the parolee's arrest and that minimum due process requirements are: (1) written notice of the claimed violations of parole; (2) disclosure to the parolee of the evidence against him; (3) opportunity to be heard in person and to present witnesses and documentary evidence; (4) the right to confront and cross-examine adverse witnesses, unless the hearing officer specifically finds good cause for not allowing confrontations; (5) a neutral and detached hearing body such as the traditional parole board; and (6) a written statement by the factfinders as to the evidence relied on and the reasons for revoking parole.

*Morrissey*, however, does not dictate that prisoners looking forward to release on parole be equated with paroles facing loss of their conditional freedom. While a necessary precondition to revocation of parole and reincarceration is a factual finding that a parolee has violated a condition of his parole, the parole release decision is based on a complex of tangible and intangible, of objective and

3. *Compare* Scarpa v. United States Board of Parole, 5 Cir. 1973, 477 F.2d 278 (en banc), vacated and remanded for consideration of question of mootness, 1974, 414 U.S. 809, 94 S.Ct. 79, 38 L.Ed.2d 44; Farries v. United States Board of Parole, 7 Cir. 1973, 484 F.2d 948; Mosley v. Ashby, 3 Cir. 1972, 459 F.2d 477; Madden v. New Jersey State Parole Board, 3 Cir. 1971, 438 F.2d 1189; United States ex rel. Bey v. Connecticut State Board of Parole, 2 Cir. 1971, 443 F.2d 1079, vacated as moot, 1971, 404 U.S. 879, 92 S.Ct. 196, 30 L.Ed.2d 159; Menechino v. Oswald, 2 Cir. 1970, 430 F.2d 403, cert. denied, 1971, 400 U.S. 1023, 91 S.Ct. 588, 27 L.Ed.2d 635; Battle v. Norton, D.Conn.1973, 365 F.Supp. 925; Barradale v. United States Board of Paroles and Pardons, M.D.Pa.1973, 362 F.Supp. 338; Bradford v. Weinstein, E. D.N.C.1973, 357 F.Supp. 1127; Williams v. United States, S.D.N.Y.1971, 327 F.Supp. 986; *with* United States ex rel. Johnson v. Chairman of New York State Board of Parole, 2 Cir. 1974, 500 F.2d 925; King v. United States, 7 Cir. 1974, 492 F.2d 1337; Candarini v. Attorney General of United States, E.D.N.Y.1974, 369 F.Supp. 1132; Childs v. United States Board of Parole, D. D.C.1973, 371 F.Supp. 1246; Johnson v. Heggie, D.Colo.1973, 362 F.Supp. 851; United States ex rel. Harrison v. Pace, E.D.Pa. 1973, 357 F.Supp. 354.

subjective, factors having to do with psychiatry, criminology, psychology, penology and human relations. In *Morrissey*, the Court, in footnote 8 of its opinion, 408 U.S. 482, 92 S.Ct. 2593, 33 L. Ed.2d 484, intimated that the due process requirements established therein for parole revocation proceedings need not be extended to those still incarcerated seeking parole. The Supreme Court, quoting approvingly from United States ex rel. Bey v. Connecticut State Board of Parole, 2 Cir. 1971, 443 F.2d 1079, 1086, vacated as moot, 1971, 404 U.S. 879, 92 S.Ct. 196, 30 L.Ed.2d 159, a case which sharply distinguishes between parole revocation proceedings and initial parole decision-making, stated: "It is not sophistic to attach greater importance to a person's justifiable reliance in maintaining his conditional freedom so long as he abides by the conditions of his release, than to his mere anticipation or hope of freedom." 408 U.S. at 482, n.8, 92 S.Ct. at 2601. This implies at the very least that the Court believes the parole decision-making process does not call for the full panoply of rights due a parolee in a parole revocation proceeding, *cf.* Wolff v. McDonnell, 1974, —— U.S. ——, 94 S.Ct. 2963, 41 L.Ed.2d 935 and may indicate that the Court views the type of interest involved here, i. e., the "mere anticipation or hope of freedom," as not being the type of private interest qualifying for due process protection, *cf.* Board of Regents v. Roth, 1972, 408 U.S. 564, 92 S.Ct. 2701, 33 L. Ed.2d 548.

In Scarpa v. United States Board of Parole, 5 Cir. 1973, 477 F.2d 278, (en banc), vacated and remanded for consideration of question of mootness, 1974, 414 U.S. 809, 94 S.Ct. 79, 38 L.Ed.2d 44, the Court of Appeals for the Fifth Circuit held that due process rights do not attach to Parole Board proceedings dealing with the grant or denial of parole.[4] The court reasoned as follows:

"The emerging and underlying principle is clear; once a cognizable benefit is conferred or received, governmental action must not be employed to deprive or infringe upon that right without some form of prior hearing. We are unaware, however, of any authority for the proposition that the full panoply of due process protections attaches every time the government takes some action which confers a new status on the individual or denies a request for a different status.

"Whether the Board grants parole is a clearly distinguishable exercise of discretion from revoking one's conditional freedom. The fifth amendment commands that the government shall not deprive one of his life, liberty or property without due process of law. Scarpa is a convicted felon currently incarcerated in prison for his past transgressions. This manifest deprivation of liberty is the result of a due process hearing. The sentencing judge mandated a possible confinement of eight years. Scarpa now attempts to equate the *possibility* of conditional freedom with the *right* to conditional freedom. We find such logic unacceptable.

"If the Board refuses to grant parole, Scarpa has suffered no deprivations. He continues the sentence originally imposed by the court. He does not allege that the Board's actions were arbitrary, fraudulent, unlawful or without reason, but only that it did not fully investigate his case. We have previously discussed the weakness of this allegation.

"The courts have repeatedly rejected Scarpa's contentions. These decisions are based on the realization that the granting of parole is not an adversary proceeding. . . ." (Footnotes omitted.)

 In resolving the question of the extent, if any, due process applies to parole decision-making, the court begins with the premise that due process is a flexible concept which varies in differ-

---

4. For cases in accord and cases contra, see note 3, supra.

ent contexts, depending upon a multitude of factors, including "the nature of the alleged right involved, the nature of the proceeding, and the possible burden on that proceeding." Hannah v. Larche, 1960, 363 U.S. 420, 442, 80 S.Ct. 1502, 1515, 4 L.Ed.2d 1307; *see* Wolff v. McDonnell, 1974, —— U.S. ——, 94 S.Ct. 2963, 41 L.Ed.2d 935; Morrissey v. Brewer, supra; Gagnon v. Scarpelli, 1973, 411 U.S. 778, 93 S.Ct. 1756, 36 L. Ed.2d 656. The due process clause does not require a hearing "in every conceivable case of government impairment of private interest" and "the very nature of due process negates any concept of inflexible procedures universally applicable to every imaginable situation." Cafeteria Workers v. McElroy, 1961, 367 U. S. 886, 894, 895, 81 S.Ct. 1743, 1748, 6 L.Ed.2d 1230.

■ Viewed in this light, it is apparent that due process does not require that the full panoply of rights due a parolee in a parole revocation proceeding be imposed on parole decision-making. Unlike a parolee facing reimprisonment who stands to lose a presently enjoyed interest in his conditional freedom, the prisoner being considered for parole release has a mere anticipation or hope of freedom. More important is the fact that the nature of parole decision-making is vastly different from that of parole revocation. Unlike a parole release decision, a necessary precondition to a parolee's reincarceration is a finding that he has violated a condition of his parole. The parolee's loss of his conditional freedom turns in large part on a retrospective determination of a specific factual question. In contrast, the parole release decision, as emphasized above, is a prognostic determination with respect to one's suitability for parole and is based on a complex of tangible and intangible factors and involves the discretionary application of knowledge derived from such fields as psychology, criminology, sociology and penology. While the parole revocation proceeding basically is concerned with making a factual determination with respect to parole violation, parole decision-making centers on making a diagnostic and predictive determination with respect to whether the rehabilitation of the prisoner and the welfare of society generally would be best served by granting the inmate conditional freedom rather than by his physical confinement.

■ For the foregoing reasons, the court holds that a prisoner is not constitutionally entitled to an evidentiary or adversary hearing on his suitability for parole; he is not entitled to an opportunity to present witnesses and documentary evidence in support of his release on parole. Nor is an inmate entitled to confront and cross-examine persons who have provided the Board with adverse information, or to interrogate the Board members. A prisoner does not have a constitutional right to examine his record or Parole Board files, and he is not entitled to rebut information in possession of the Board which militates against his parole. The foregoing rights are the kind usually associated with an adversary-type hearing or adjudicatory proceedings in which vital issues of fact are to be decided which affect important rights of the litigants. The Board does not function as an adversary of the prisoner, and it has an interest in releasing those who qualify for parole. Menechino v. Oswald, 2 Cir. 1970, 430 F.2d 403, 407–408, cert. denied, 1971, 400 U.S. 1023, 91 S.Ct. 588, 27 L.Ed.2d 635; Scarpa v. United States Board of Parole, supra. The above procedural due process rights would convert the inmate's interview before the Parole Board into an adversary hearing, thereby unnecessarily hindering and burdening the parole decision-making process.

■ Whether due process attaches in other respects, e. g., whether the Board is constitutionally required to give the reasons for its decision when it denies parole, is an issue that is not presented by the claims asserted in this action, and hence that issue has not been

reached.[5] The United States Board of Parole pursuant to its own regulations provides reasons for denial of parole in its Northeast Region.[6] The court, however, does reject the contention that, in addition to reasons, a prisoner is constitutionally entitled to a detailed written statement of the information utilized by the Board in reaching its decision. Due process does not require that the Board undertake this administrative burden.

Near the end of his petition, petitioner alleges as "a second cause of action" that he has been subjected to harassment by law enforcement agencies. Specifically, he alleges that at the time of his trial in North Carolina, the F.B.I. released false information about him to the Saginaw News and Greensboro Daily Record and that his home was burglarized in an effort to obtain evidence against him.

■■■■ These claims, which relate to alleged actions by the government in securing his conviction, are not cognizable in this habeas corpus petition. Title 28, U.S.C.A. § 2255, provides the federal prisoner with a post-conviction remedy to test the legality of his detention by filing a motion to vacate judgment and sentence in the trial court in which he was convicted and sentenced. A federal prisoner may not challenge his conviction by means of habeas corpus unless and until he has exhausted all of the ordinary remedies in the circuit wherein he was convicted, including those under 28 U.S.C.A. § 2255. Strollo v. Alldredge, 3 Cir. 1972, 463 F.2d 1194, cert. denied, 1972, 409 U.S. 1046, 93 S.Ct. 546, 34 L.Ed.2d 497; Application of Galante, 3 Cir. 1971, 437 F.2d 1164; Kuhn v. United States, 5 Cir. 1970, 432 F.2d 82; Reed v. Ciccone, 8 Cir. 1966, 357 F.2d 926; Mucherino v. Blackwell, 3 Cir. 1965, 340 F.2d 94.

■■■ Finally, there is an allegation at the end of the petition that the failure of the prison authorities to transfer petitioner to a community treatment center in Detroit is evidence that harassment by the government continues. This contention is frivolous. This court in a recent case, Wiley v. Weger, M.D.Pa. No. 74–289 Civil (decided May 29, 1974), held that the decision of the classification committee at Allenwood Federal Prison not to transfer petitioner to the community treatment center in Detroit was amply supported by the record, was not arbitrary or capricious, and was not an abuse of discretion. Therefore, the court denied petitioner's request for a writ of mandamus directing his transfer. Petitioner cannot relitigate that issue in this action, and the contention that the refusal to transfer him constitutes harassment by the government is totally without merit.

5. In Mosley v. Ashby, 3 Cir. 1972, 459 F.2d 477, and Madden v. New Jersey State Board of Parole, 3 Cir. 1971, 438 F.2d 1189, the Court of Appeals for the Third Circuit in per curiam opinions held that a state prisoner's constitutional rights were not violated because the Parole Board did not give reasons for its decision to deny parole. Both these cases were decided before the Supreme Court's decision in Morrissey v. Brewer, 1972, 408 U.S. 471, 92 S.Ct. 2593, 33 L.Ed. 2d 484. In a recent case, United States ex rel. Johnson v. Chairman of New York State Board of Parole, 2 Cir. 1974, 500 F.2d 925, the Court of Appeals for the Second Circuit held that due process does require a parole board to furnish prisoners a written statement of reasons when release on parole is denied. In King v. United States, 7 Cir. 1974, 492 F.2d 1337, in requiring the federal Parole Board to provide reasons when denying release on parole, the Court of Appeals for the Seventh Circuit relied on the Administrative Procedure Act, 5 U.S.C.A. § 500 et seq., which obligates a federal administrative "agency", 5 U.S.C.A. § 551(1), to give prompt notice of the denial of a written application or petition accompanied by a brief statement of the grounds for denial, 5 U.S.C.A. § 555(e).

6. The Parole Board's self-imposed obligation of giving reasons apparently is still confined to the Northeast Region, which includes the state of Pennsylvania. See 39 Fed.Reg. § 2.13 (1974). The reason requirement was originally instituted experimentally in October 1972, and then formalized as to the Northeast Region in a regulation effective October 1, 1973, see 28 C.F.R. § 2.15 (revised), 38 Fed.Reg. 26652 (1973).

This memorandum is in support of this court's order of July 18, 1974, which denied the petition for a writ of habeas corpus and dismissed the action.