**Thomas LA BONTE**

v.

**J. Bernard GATES, Chairman of the Connecticut Board of Parole, et al.**

**Howard STUDLEY**

v.

**J. Bernard GATES, Chairman of the Connecticut Board of Parole, et al.**

**Michael HOLUP**

v.

**J. Bernard GATES, Chairman of the Connecticut Board of Parole, et al.**

Civ. Nos. H–75–119, H–75–144 and H–75–174.

United States District Court, D. Connecticut.

Jan. 13, 1976.

---

Stephen Wizner, Yale Legal Services Organization, New Haven, Conn., for plaintiffs.

Stephen J. O'Neill, Asst. Atty. Gen., Hartford, Conn., for defendants.

## MEMORANDUM OF DECISION

BLUMENFELD, District Judge.

In these three actions Connecticut state prisoners raise constitutional challenges to the procedures of the Connecticut Board of Parole.

■ Since each plaintiff seeks only a declaration of the legal duty of the Board of Parole, and not a new parole or immediate release,[1] jurisdiction is proper-

---

1. In addition to his request for a Declaratory Judgment, Michael Holup, the plaintiff in action No. H–75–174, alleges that the members of the Board denied him parole due to personal animosity and in retaliation for legal actions he had previously undertaken against them. In recompense he seeks one million dollars in actual and punitive damages from each of the three members who participated in his hearing. However, absolutely no evidence was presented to support this allegation at the hearing in this action, and his damage claim must therefore be denied.

ly invoked under 42 U.S.C. § 1983 and 28 U.S.C. §§ 1343(3) and 1343(4), as well as under the Declaratory Judgment Act, 28 U.S.C. §§ 2201, 2202. *Haymes v. Regan,* 525 F.2d 40 (2d Cir. 1975). Furthermore, since these are properly characterized as civil rights actions, rather than petitions for habeas corpus, *Preiser v. Rodriguez,* 411 U.S. 475, 93 S.Ct. 1827, 36 L.Ed.2d 439 (1973), the plaintiffs need not have first exhausted the state judicial remedies which may be available to them. *See, e. g., Taylor v. Warden,* No. 187387 (Super.Ct., Hartford Co., July 17, 1975).

Finally, although the original complaints sought injunctions against the continued enforcement of the current Board procedures, these requests have been dropped in order to obviate the need for a three-judge court. *See Kennedy v. Mendoza-Martinez,* 372 U.S. 144, 154–55, 83 S.Ct. 554, 9 L.Ed.2d 644 (1963); *Chesney v. Adams,* 377 F.Supp. 887, 890 (D.Conn.1974), *aff'd,* 508 F.2d 836 (2d Cir. 1975).

### I. *Mootness and Class Certification*

■ The parties agreed, with the approval of this court, to consolidate these cases, and a hearing was held on September 5, 1975. Since that time, two of the plaintiffs, Thomas LaBonte and Howard Studley, have been granted definite parole release dates. These two plaintiffs have no further interest in the procedures which the Parole Board follows in its hearings, and their cases must therefore be dismissed as moot. *Weinstein v. Bradford,* 423 U.S. 147, 96 S.Ct. 347, 46 L.Ed.2d 350 (1975).

The remaining plaintiff, Michael Holup, was again denied parole after a hearing held on November 6, 1975. He therefore continues to pursue a live controversy with the Board of Parole.[2]

After the hearing in this action, the plaintiff filed a motion for certification as a class action. It is Holup's desire, or more exactly, the desire of his attorneys, to preserve this action against a future mootness challenge, should he be paroled before the appellate process has been completed. This is clearly not an idle concern. *See, e. g., Weinstein v. Bradford,* 423 U.S. 147, 96 S.Ct. 347, 46 L.Ed.2d 350 (1975); *Regan v. Johnson,* 419 U.S. 1015, 95 S.Ct. 488, 42 L.Ed.2d 289 *vacating as moot, United States ex rel. Johnson v. Chairman, New York State Board of Parole,* 500 F.2d 925 (2d Cir. 1974). The defendants do not oppose this motion, since they too profess to desire a final adjudication on the merits.

■ I have concluded, however, that because the motion was not filed until after the hearing on the merits, and after decision had been reserved, this case is not a proper vehicle for class adjudication.

While the possibility of future mootness is a valid concern of trial counsel, and while timely class certification may effectively obviate that concern, *see Sosna v. Iowa,* 419 U.S. 393, 401–02, 95 S.Ct. 553, 42 L.Ed.2d 532 (1975) and *Weinstein v. Bradford;* it would turn the theory of class representation on its head and open the door to potential serious abuse to allow a plaintiff or a defendant to fully present his case and then, after weighing the strength of his own case or the weakness of his opponent's, to convert his individual action into a class representation.

Prosecuting an action as a class action under Rule 23, Fed.R.Civ.P., places serious added responsibilities upon the class representative, his counsel, and this court; and increases the potential liabili-

---

2. Mr. Holup refused to appear personally before the Board at this hearing, apparently because of the pendency of this action. *See* Letter from Michael Holup to J. Bernard Gates, Chairman, Connecticut Board of Parole, Sept. 22, 1975, attached as exhibit to Brief of Defendant. While this could conceivably have raised an equitable defense to this action, *but see United States ex rel. Schuster v. Vincent,* 524 F.2d 153 (1975), the defendants have not sought to assert one. And since the plaintiff had the right to waive his hearing altogether, his failure to attend could not, in and of itself, have justified the denial of his request for parole. State of Connecticut Board of Parole, Statement of Organization and Procedure 7–8. His refusal to attend, therefore, in no way affects the existence of an actual controversy.

ty of the party opposing the claim as well. By this motion the plaintiff is, in effect, asking this court to find, *nunc pro tunc,* that these responsibilities have knowingly been assumed by all parties during the preparation and presentation of these cases. Even though the hearing was ably conducted by plaintiff's counsel, this court is not prepared, at this late date, to bind future plaintiffs, without notice, to the decision in a hearing which has already been conducted.

■ The fact that the motion is uncontested is unimportant. If this decision is appealed, and if Mr. Holup is paroled before the appeals are finally decided, there will no longer exist a controversy between him and the State Board of Parole. He will have achieved his goal—freedom on parole. At that point any decision which might be rendered in this case would amount to an advisory opinion on the constitutionality of the procedures of the Board of Parole. Federal courts do not render advisory opinions, even with the consent of the parties. *United States v. Johnson,* 319 U.S. 302, 63 S.Ct. 1075, 87 L.Ed. 1413 (1943). The risk of abuse is especially strong when the relief requested is a declaratory judgment, and this court must therefore be especially careful to assure itself of the existence of an actual, continuing controversy between the named plaintiff and the defendants. *See Maryland Casualty Co. v. Pacific Coal & Oil Co.,* 312 U.S. 270, 273, 61 S.Ct. 510, 85 L.Ed. 826 (1941). To allow certification at this point would be to shirk that responsibility. The motion for class certification is, therefore, denied.

## II. *Constitutional Challenges to Parole Board Procedures*

Although the complaint in this action challenged the Parole Board procedures on several grounds, the plaintiff, after the hearing, abandoned all but two of his claims. He charges that (1) the failure of the Parole Board to allow a prisoner to inspect his prison file prior to the parole hearing and, (2) the refusal to allow a prisoner to be assisted by counsel, or other qualified representative, violate the Due Process clause of the fourteenth amendment.

■ This case is not the first to challenge parole board procedures across the nation, and, although several years of litigation have produced somewhat different results in different circuits, several things are clear. First, and most important, parole board hearings are subject to the due process requirements of the fourteenth amendment. *Haymes v. Regan,* 525 F.2d 540 (2d Cir. 1975); *United States ex rel. Johnson v. Chairman, New York State Board of Parole,* 500 F.2d 925 (2d Cir.), *vacated sub nom., Regan v. Johnson,* 419 U.S. 1015, 95 S.Ct. 488, 42 L.Ed.2d 289 (1974). Second, the prisoner is not entitled to the full panoply of due process rights, *Johnson; Menechino v. Oswald,* 430 F.2d 403 (2d Cir. 1970), *cert. denied,* 400 U.S. 1023, 91 S.Ct. 588, 27 L.Ed.2d 635 (1971), and the determination of exactly what process is due is a product of balancing the inmate's interest in his "conditional right to freedom" with the "need for and usefulness of the particular safeguard in the given circumstances. . . ." *Frost v. Weinberger,* 515 F.2d 57, 66 (2d Cir. 1975); *Haymes,* at 543.

■ Beyond this we know only that a prisoner who is denied parole is entitled to a statement of the reasons for the denial, *Johnson* ; and that prisoners are not constitutionally entitled to a published list of the criteria used by parole boards in reaching their determinations. *Haymes.*

The question for this court then, pending a comprehensive determination of the issue by a court of higher authority,[3] is which way does the balance tip on the

---

3. The much awaited answer from the Supreme Court has been indefinitely postponed now that *Weinstein v. Bradford* has been vacated and remanded. The next opportunity appears to be *Scott v. Kentucky Parole Board,* F.2d (6th Cir. 1975), *cert. granted,* —— U.S. ——, 96 S.Ct. 561, 46 L.Ed.2d 404 (1975).

questions of access to an inmate's file and representation by counsel or a substitute?

The historical argument against representation by counsel is that the parole board hearing is not an adversarial proceeding, but rather, in conjunction with the indeterminate sentence, a further step in the rehabilitative process of imprisonment, in which a board of qualified individuals attempts to assess the effect of imprisonment upon the prisoner, predict the likelihood of future criminal behavior, and weigh these factors against the welfare of society.[4] The parole board has been described as having an "identity of interest" with the prisoner, and as *parens patriae. Menechino v. Oswald*, 430 F.2d 403, 407 (2d Cir. 1970), *cert. denied*, 400 U.S. 1023, 91 S.Ct. 588, 27 L.Ed.2d 635 (1971); *Hyser v. Reed*, 115 U.S.App.D.C. 254, 318 F.2d 225, 237 (D.C.Cir.), *cert. denied sub nom., Thompson v. United States Board of Parole*, 375 U.S. 957, 84 S.Ct. 446, 11 L.Ed.2d 315 (1963).[5]

The plaintiff, on the other hand, argues that, while this description may be theoretically desirable, it misconstrues the actual nature of the parole process. He would have the process viewed as a form of delayed sentencing in which the parole board, after assembling a greater breadth of information than is available to most trial courts at the time of sentencing, and with the advantage of a period during which the prisoner had been under close supervision and observation, determines the exact length of *incarceration within the limits set by the* sentencing court. From this model he argues that a prisoner before the parole board should be entitled to the same procedural safeguards he received when he stood before the sentencing judge.

It is not necessary, however, for this court to choose between these two models in order to resolve the issues presented by this case. The decisions of the Court of Appeals for the Second Circuit, in *Menechino* and *Haymes*, preclude an adoption of the logical conclusion of the plaintiff's position, and it is not necessary to reaffirm the historical view in order to reject the plaintiff's challenge.[6]

■ The focus of the parole board hearing is an evaluation of the potential parolee and an estimation of his chances for success on parole. This is essentially a personal evaluation, and the parole board uses information from many sources, including pre-sentence reports, reports from the prison authorities, and, in many cases, psychiatric evaluations. Central to the process, however, is an informal hearing at which the members

---

4. *See, e. g.*, Conn.Gen.Stat.Ann. § 54–125.

5. It is interesting to compare the descriptions of the parole process and the gradual expansion of due process rights with the original characterization and evolution of the constitutional safeguards in juvenile proceedings, from *In re Gault*, 387 U.S. 1, 87 S.Ct. 1428, 18 L.Ed.2d 527 (1976), to *Breed v. Jones*, 421 U.S. 519, 95 S.Ct. 1779, 44 L.Ed.2d 346 (1975).

6. At this point it is appropriate to state that the court was extremely impressed with the caliber of the membership of the Connecticut Board of Parole. Each member who *testified* at the hearing seemed genuinely interested in the welfare of the prisoners with whom he dealt, and dedicated to performing the necessary preparation to the best of his ability. This is especially true of the chairman, Mr. Gates, who testified that the overwhelming characteristic of the Board, as it is presently constituted, is a *desire* to parole as many men as is possible. This desire is confirmed by the fact that over 95 per cent of the inmates in the Connecticut prison system are paroled before the end of their terms, and over 50 per cent are paroled at their first hearing. Mr. Gates also impressed this court with his willingness to adapt the procedures of the Board to his perception of the wishes of the majority of the inmates, tempered only by his conception of the restraints imposed by administrative necessity.

However, the fact that the current membership of the Board of Parole may feel compelled to act in the best interests of the inmates does not mean that the Constitution does not require that certain procedures be institutionalized in order to guarantee the fairness of the parole process and to insure the possibility of meaningful review. It should go without saying that a procedural due process challenge to the parole process in no way reflects upon the ability or motivation of the members of the Board.

are able to meet with the prisoner, question him, and crystallize their judgment. This court is not convinced that allowing the prisoner to be represented by counsel or counsel substitute would advance the purposes of the parole hearing. The members are chiefly interested in interviewing the inmate himself; it will not serve their purpose to interview his representative. The chosen counsel, after all, will not be the one who will be living out on parole. And it is the estimation of the potential for successful completion of parole which is the purpose of the hearing process.

■ The fourteenth amendment requires only a balance of the interests which will be served by a given procedure. *Hannah v. Larche,* 363 U.S. 420, 442, 80 S.Ct. 1502, 4 L.Ed.2d 1307 (1960). While a representative might be able to make a more polished and thorough presentation of the prisoner's strong points, he would be more likely to frustrate the ability of the parole board members to personally evaluate the personality, sincerity and credibility of the potential parolee. This, in turn, would limit their ability to estimate the prisoner's readiness for and likelihood of success on parole. Therefore, I conclude that the balance tips against representation by counsel at parole hearings. *Accord, Franklin v. Shields,* 399 F.Supp. 309 (W.D.Va. 1975).

■ The issue of whether the Board of Parole is constitutionally required to allow the inmate to inspect his prison file prior to the hearing is a much closer one. The courts which have passed on this question are sharply divided. Three courts have held that inspection is constitutionally required. *Franklin v. Shields,* 399 F.Supp. 309, 316–17 (W.D.Va.1975); *Cooley v. Sigler,* 381 F.Supp. 441, 443 (D.Minn.1974); *Childs v. United States Board of Parole,* 371 F.Supp. 1246 (D. D.C.1973), *aff'd in part,* 511 F.2d 1270

(D.C.Cir. 1974). Three other courts, including one in this district, have held that, while inspection may be a beneficial addition to the hearing procedure, it is not mandated by the fourteenth amendment. *Fisher v. United ·States,* 382 F.Supp. 241 (D.Conn.1974); *Wiley v. United States Board of Parole,* 380 F. Supp. 1194 (M.D.Pa.1974); *Barradale v. United States Board of Paroles and Pardons,* 362 F.Supp. 338 (M.D.Pa.1973).

The essential test, as laid down in the most recent opinion of this circuit, *Haymes v. Regan,* is an evaluation of whether mandating inspection would "appreciably enhance the protection accorded the parole applicant or add to the fairness of the proceeding." At 544.

It was admitted at the hearing that the prison files of the inmates frequently contain erroneous information. And *see Cardaropoli v. Norton,* 523 F.2d 990, 997 (2d Cir. 1975); *Franklin v. Shields,* 399 F.Supp. at 316–17. Furthermore, since the Board already prepares three copies of each folder at least one week in advance of the hearing for the use of its members, there would be only a small additional burden in preparing another folder. The problem of confidential information could be handled by marking confidential items as such at the time they are added to the file.[7]

This court is simply not convinced, however, that allowing an inmate to examine his file would add so appreciably to the fairness of the hearing procedure that it can be said to be mandated by the fourteenth amendment. The temptation to hold that all seemingly good ideas are constitutionally compelled is one which must be avoided, especially in an area such as parole, where the Board is entrusted with extremely broad discretion and a grave responsibility. *Cf. Jones v. Marshall,* 528 F.2d 132 (2d Cir. 1975).

7. The practicality of this arrangement is illustrated by the procedures of the United States Board of Parole which allow an inmate to examine his file prior to his hearing. United States Bureau of Prisons Policy Statement No. 2211.8, June 12, 1975.

Furthermore, as Judge Newman pointed out in *Fisher v. United States*, 382 F.Supp. 241 (D.Conn.1974); holding that the Board of Parole is constitutionally compelled to disclose information which consists largely of the pre-sentence report would hold the Board to a higher constitutional standard than the court which sentenced the prisoner originally, which was not compelled to disclose the identical information. *United States v. Fischer*, 381 F.2d 509 (2d Cir. 1967), *cert. denied*, 390 U.S. 973, 88 S.Ct. 1064, 19 L.Ed.2d 1185 (1968). *Cf. United States v. Nugent*, 346 U.S. 1, 73 S.Ct. 991, 97 L.Ed. 1417 (1953).

This court concludes, therefore, that neither representation by counsel nor the right to inspect the prison file prior to parole hearings is required by the fourteenth amendment. The complaint of the remaining plaintiff, Michael Holup, must be and is dismissed.

So ordered.