**Michael HOLUP et al.,
Plaintiffs-Appellants,**

v.

**J. Bernard GATES, Chairman, Connecticut Board of Parole, et al.,
Defendants-Appellees.**

**Nos. 1078, 1296 and 1297, Dockets
76–2013, 76–2018 and 76–2045.**

United States Court of Appeals,
Second Circuit.

Argued June 17, 1976.

Decided Oct. 20, 1976.

---

Stephen Wizner and Phil Kunsberg,* New Haven, Conn. (Judith M. Mears, Dennis E. Curtis and Mary F. Keller, New Haven, Conn., of counsel), for plaintiffs-appellants.

* Appeared pursuant to the Student Practice Rule (46E) of this Court.

Stephen J. O'Neill, Asst. Atty. Gen., Hartford, Conn. (Carl R. Ajello, Atty. Gen., Hartford, Conn., of counsel), for defendants-appellees.

Before MANSFIELD, OAKES and GURFEIN, Circuit Judges.

GURFEIN, Circuit Judge:

There were originally three plaintiffs in the District Court of Connecticut, Thomas LaBonte, Michael Holup and Howard Studley. Each separately sought a declaratory judgment under 42 U.S.C. § 1983 and 28 U.S.C. § 2201 to the effect that the Due Process Clause of the Fourteenth Amendment requires (a) that each state prisoner be allowed to inspect his prison file *before* it is used by the Connecticut Parole Board in deciding whether to grant the inmate parole, and (b) that each inmate be allowed the assistance of counsel or a counsel-substitute during the parole release hearing.

These three plaintiffs were given a joint trial by the District Judge, Hon. M. Joseph Blumenfeld. Following the trial, but before the decision of the District Court was announced, Studley and LaBonte were released on parole. Their actions were properly dismissed as moot. *See Weinstein v. Bradford,* 423 U.S. 147, 96 S.Ct. 347, 46 L.Ed.2d 350 (1975). Holup moved to certify a class of plaintiffs with himself as its representative. The court denied certification essentially because the application was made after the trial had already been held. No attempt has been made to appeal this ruling.

Judge Blumenfeld proceeded to render a decision in the case of Holup. He rejected both claims in a considered opinion, *LaBonte v. Gates,* 406 F.Supp. 1227 (D.Conn. 1976). After the decision Holup, too, was released on parole, and no appellant of the original three plaintiffs remained. At the time of the decision, however, two similar actions had been pending, brought by inmates Craig Copley and Arthur DeLorenzo.

Without a further hearing the Judge dismissed their complaints on the authority of his decision in *LaBonte v. Gates, supra.* While three appeals were still pending by

Holup as well as Copley and DeLorenzo, Copley was also paroled. That leaves one appellant, DeLorenzo, still incarcerated. His appeal remains the only appeal before us.

I

Judge Blumenfeld was correct in holding that due process does not require Connecticut to change its present rules regarding the participation by counsel in the parole release hearing. The Connecticut procedure in this regard is eminently fair. Counsel for the parolee is permitted to have a pre-hearing conference with the chairman of the panel which will decide the parolee's case, and to place in the file which all members of that panel read, any statement or other documentary information. The justification advanced by the Board for excluding counsel or counsel-substitute from the hearing itself is quite reasonable: The purpose of the hearing in the Connecticut system is to enable the members personally to speak with and observe the inmate, to determine his attitude towards his crime, readiness for parole and the like. The members feel that this can best be achieved by hearing the inmate's own words, unguided by the presence or promptings of counsel. We find that the state's interest in excluding persons other than the inmate from the hearings outweighs the "need for and usefulness" to the inmate of having such a representative, despite the inmate's concededly great interest in the decision being made. *See Haymes v. Regan,* 525 F.2d 540, 543 (2d Cir. 1975); *Frost v. Weinberger,* 515 F.2d 57, 66 (2d Cir. 1975).

The Supreme Court has declined to hold appointment of counsel constitutionally required in all parole or probation *revocation* cases, *Gagnon v. Scarpelli,* 411 U.S. 778, 93 S.Ct. 1756, 36 L.Ed.2d 656 (1973). On the basis of *Gagnon,* the Seventh Circuit held that "[s]ince the arguments favoring the appointment of counsel certainly have no greater force as applied to a parole release hearing than to a parole revocation hearing, this holding requires rejection of plaintiff's due process argument" for the right to counsel in a parole release hearing. *Ganz v.*

*Bensinger,* 480 F.2d 88, 90 (7th Cir. 1973) (Stevens, *J.*). And the Court has recently refused "to hold that inmates have a right to either retained or appointed counsel in disciplinary proceedings", *Wolff v. McDonnell,* 418 U.S. 539, 570, 94 S.Ct. 2963, 41 L.Ed.2d 935 (1974), even though these proceedings, which involve the loss of "good time," to some extent resemble traditional adversary proceedings which have been thought to require counsel for the accused. *See also, Baxter v. Palmigiano,* 425 U.S. 308, 96 S.Ct. 1551, 47 L.Ed.2d 810 (U.S. 1976).

Although the parole release decision is arguably distinguishable from the types of proceedings involved in the above decisions, we do not think this helps appellants and in any case the direction of the Court is clear.[1] In view of the generous opportunity afforded counsel to place his or her views on the record prior to the hearing, we hold that the Constitution does not require the Connecticut State Board of Parole to permit counsel or counsel-substitute to attend the hearings.

## II

■ This appeal comes to us in an unusual posture. The original plaintiffs who had a hearing are no longer engaged in a case or controversy that is justiciable. *See DeFunis v. Odegaard,* 416 U.S. 312, 94 S.Ct. 1704, 40 L.Ed.2d 164 (1974). *Cf. Frost v. Weinberger,* 515 F.2d 57, 62–63 (2d Cir. 1975). The only remaining appellant, DeLorenzo, had no hearing. We have no record to review in appellant's own case, but he is willing to stand on the trial record made in the other cases, in which Connecticut Parole officials testified. The claim is that as a matter of constitutional law, *any* parole procedure which fails to allow *every* prospective parolee an inspection of his file in advance of his hearing, whether requested or not, is a violation of the Fourteenth Amendment by the State involved.[2] The procedure by which this abstract proposition is presented is by a request for a declaratory judgment.[3]

■ In *Haymes v. Regan,* 525 F.2d 540, 543 (2d Cir. 1975), we specifically considered a three-pronged test to be applied in deciding what procedural protections are constitutionally due in the particular state proceeding, the balance between "the inmate's interest in the proceedings . . . the 'need for and usefulness of the particular safeguard in the given circumstances

---

**1.** We note the distinctions made in *Childs v. United States Board of Parole,* 167 U.S.App. D.C. 268, 511 F.2d 1270 (1974). There the court stated:

> "There is a substantial difference on the due process issue between a finding of serious disciplinary action leading to loss of good-time credits, involved in *Wolff,* and denial of an application for parole. The broad discretion of the Board in the latter instance lessens the content of required due process . . . ." *Id.* at 1282.

And Judge Tamm in a concurring opinion stated:

> " . . . I recognize a distinction between the discretion afforded the government in denying an application of conditional liberty and in revoking liberty once granted. Consequently, I do not read our holding as requiring that parole denial procedures incorporate all the elements of due process made applicable to parole revocation proceedings in *Morissey.*" *Id.* at 1286.

*See Ganz v. Bensinger,* 480 F.2d 88, 90 (7th Cir. 1973).

**2.** The district courts are divided on the question of access to files in parole release decision-making. *Compare Childs v. United States Board of Parole,* 371 F.Supp. 1246 (D.D.C. 1973), *aff'd in part, vacated in part,* 167 U.S. App.D.C. 268, 511 F.2d 1270 (1974); *Franklin v. Shields,* 339 F.Supp. 309, 316–17 (W.D.Va. 1975); *Cooley v. Sigler,* 381 F.Supp. 441, 443 (D.Minn.1974) with *Fisher v. United States,* 382 F.Supp. 241 (D.Conn.1974); *Wiley v. United States Board of Parole,* 380 F.Supp. 1194 (M.D. Pa.1974).

**3.** We think that in the absence of a record that tells us what happened in DeLorenzo's case we should be reluctant to declare rights generally. The granting of declaratory relief is governed by equitable principles, *Eccles v. Peoples Bank of Lakewood Village,* 333 U.S. 426, 431, 68 S.Ct. 641, 92 L.Ed. 784 (1948), and within the sound discretion of the reviewing court. *See Alabama State Federation of Labor v. McAdory,* 325 U.S. 450, 462, 65 S.Ct. 1384, 89 L.Ed. 1725 (1945). *See also Public Service Commission of Utah v. Wycoff Co.,* 344 U.S. 237, 245, 73 S.Ct. 236, 97 L.Ed. 291 (1953).

. . . .' [and] any direct burden which might be imposed on the Board" by this requirement, citing *Frost v. Weinberger*, 515 F.2d 57, 66 (2d Cir. 1975) and *Hannah v. Larche*, 363 U.S. 420, 442, 80 S.Ct. 1502, 4 L.Ed.2d 1307 (1960). We followed the balancing test earlier laid down in *United States ex rel. Johnson v. Chairman, New York State Board of Parole*, 500 F.2d 925, 928–29 (2d Cir. 1974). *See Bradford v. Weinstein*, 519 F.2d 728, 733 (4th Cir. 1974), *vacated as moot*, 423 U.S. 147, 96 S.Ct. 347, 46 L.Ed.2d 350 (1975).

We decided in *Haymes* that the New York statute (Correction Law § 214) requiring the Board to inform each prisoner denied parole of " 'the facts and reason or reasons for such denial' " was sufficient. We held that "[t]his requirement, if properly observed, should serve to protect the inmate from arbitrary and capricious decisions or actions grounded upon impermissible considerations. *United States ex rel. Johnson, supra*, 500 F.2d at 929." 525 F.2d at 544.

We could accept this as dispositive of the issue here raised, particularly when we must also balance the possible administrative hardship in redacting each file to excise information given in confidence or which threatens prison discipline.

On the other hand, if we were convinced that errors in the files of Connecticut are especially common and that the true facts upon which parole is denied are often concealed, we might reach another conclusion.

The trial of the three original plaintiffs, on which appellant relies, discloses that the Connecticut Parole Board apparently follows the requirements of *Haymes v. Regan*, 525 F.2d 540 (2nd Cir. 1975), and *United States ex rel. Johnson v. Chairman, New York State Board of Parole*, 500 F.2d 925 (2d Cir. 1974). The Board gives its reasons for denying parole with respect to each inmate on an individual basis, and also reveals the adverse information on which it

relies. In none of the cases heard by Judge Blumenfeld did the plaintiff appear to have been taken by surprise. In each case, the inmate had been informed .at the parole hearing of the information in his file about which the Board was concerned. In each case the inmate was allowed to comment on and to explain such undisputed facts as a lengthy criminal record, a recent escape attempt, and a denial of guilt to a psychiatrist before pleading guilty in court. Inmates were permitted to rebut the articulated reasons stated by the Board which militated against parole. Judge Blumenfeld repeatedly sought to elicit from the plaintiffs specific instances of inaccuracies in the files or of other prejudice to the plaintiffs because of the absence of disclosure in advance of the hearing. None was established. There is nothing in *Haymes v. Regan* itself to require that that Parole Board do more than "provide the inmate with both the grounds for decision to deny him parole, and the essential facts from which the Board's inferences have been drawn." 525 F.2d at 544. This Connecticut does.

■ The Supreme Court has never passed on the question, however, whether a presentence report must be shown to a defendant in advance of sentencing.[4] The Court has held that a sentence cannot stand if it is based on assumptions concerning the defendant's criminal record that are "materially untrue." *Townsend v. Burke*, 334 U.S. 736, 741, 68 S.Ct. 1252, 92 L.Ed. 1690 (1948), or if it is founded "in part upon misinformation of constitutional magnitude." *United States v. Tucker*, 404 U.S. 443, 447, 92 S.Ct. 589, 592, 30 L.Ed.2d 592 (1972). With this resolution of the ultimate effect of material mistake, we must, of course, agree. And, as we explained in *United States ex rel. Johnson, supra*, 500 F.2d at 930, in the case of a parole board, judicial review should be available "when its decision has no basis in the prisoner's file." *See also Kohlman v. Norton*, 380

---

4. The Supreme Court has granted certiorari to consider the legality of a death sentence where the judge refused to disclose a confidential section of the presentence report on which he relied in part in imposing a death sentence contrary to the recommendation of the jury. *Gardner v. Florida*, —— U.S. ——, 96 S.Ct. 3219, 49 L.Ed.2d 1216 (1976).

F.Supp. 1073, 1074–75 (D.Conn.1975). The question is whether due process requires us to assume that only by exposing every prison file in advance can misinformation or failure to consider information favorable to the prisoner in the parole release process be substantially avoided.

In subjecting the due-process claim to a balancing test, we do not have sufficient hard evidence in this record upon which to base a judgment. There is no doubt that many inmates would like as much preparatory material as possible in advance of their appearance before the Board. Whether the divulging of information in the file will, in the average case, be of any help in allowing the inmate to affect the parole decision is more doubtful. The Connecticut Parole Board releases over 95% of the inmates on parole before term expiration, and over 50% at the first parole hearing.[5] Nor are we clear on this record whether the "mistakes" in the parole files are of matters material to the parole decision. We lack convincing evidence, moreover, of whether the burden that would be imposed upon the Parole Board if appropriate review for the redaction of confidential material were made, would be onerous, and whether giving a redacted file to every prospective parolee, including those who will be granted parole, would make for an excessive, and, indeed, unnecessary burden.

We must accordingly remand to the District Court, with some reluctance, to hold a separate trial in DeLorenzo's case in which an adequate record will be made to supply the evidence mentioned above. The history of the mistakes actually called to the attention of the Connecticut Parole Board should also be elicited. Testimony should also be taken on the method that would be used in redacting prisoners' files, and the extent of such burden, if it were required that only prisoners who have been denied parole should be given access to their redacted files with a further prompt second hearing after the prisoner has had a chance to look through his file for mistaken items.

We do not intimate what the District Court should decide after the full record is made before it. Since we have already devoted so much time to this appeal, however, we believe it to be in the interest of an orderly administration that this panel retain jurisdiction in the event that there is a further appeal.

Remanded for further proceedings relating to Part II of this opinion. The District Court's judgment denying the right to representation at a parole board hearing is affirmed.

---

5. *See LaBonte v. Gates,* 406 F.Supp. 1227, 1231 n. 6 (D.Conn.1976).